IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARK MISIANO,<br><br>Defendant. | CRIMINAL ACTION<br>NO. 26-mj-1432 |

**OPINION**

**Slomsky, J.** **August 11, 2026**

## I. INTRODUCTION AND BACKGROUND

Presently before the Court is the Government's Motion to Appeal and Revoke the Pretrial Release Order and for Detention Pending Trial (Doc. No. 15). For the following reasons, the Government's Motion will be granted.

### A. Factual Background

On July 24, 2026, the Government filed a Criminal Complaint against Defendant Mark Misiano. (Doc. No. 1.) As part of the Criminal Complaint, the Government submitted an affidavit from Special Agent Brandon Roche of the Federal Bureau of Investigation ("FBI"), which contains much of the factual background here. (See Doc. No. 1-1.)

On July 20, 2026, U.S. Magistrate Judge Sandra Moore Wells approved a search warrant for Defendant's residence on the 1100 block of South 7th Street in Philadelphia and for his person. (Doc. No. 1-1 at 3.) The facts supporting this search warrant included information provided by a cooperating defendant (hereinafter, "CD-1").[1] According to CD-1, Defendant

[1] On May 21, 2026, CD-1 pled guilty to one count of distributing child pornography, in

communicated with CD-1 over text messages and the Telegram messaging application to share child pornographic material. (Id.) Additionally, Defendant and CD-1 met in-person to view child pornography together. (Id.) According to CD-1, during one of their meetings he remembered Defendant stating that the children being abused in the material were not young enough for his taste before preceding to watch child sexual abuse material ("CSAM") involving children who were infants to five years old. (Doc. No. 15 at 3.) CD-1 further stated that Defendant described himself as a "nepiophile," meaning a person who is sexually attracted to children under the age of five years old. (Id. at 4.) CD-1's statements were corroborated by messages later recovered from CD-1's telephone dating back to July 29, 2025, and as recent as January 31, 2026. (Doc. No. 1-1 at 3.)

On January 12, 2026 and January 14, 2026, Defendant had the following conversation with an FBI agent, whom he believed was CD-1, in which they discussed meeting an individual who had access to a child:

January 12, 2026

Defendant: I'm so excited to see you.

To pedo date with you

To watch child porn with you

January 14, 2026

UC/CD-1: …You should ask about my friend I'm staying with haha

violation of 18 U.S.C. § 2252(a)(2), (b)(1) in the District of Columbia. As part of this investigation, CD-1 cooperated with the Government and provided information regarding a person later identified as Defendant. (Doc. No. 1-1 fn. 2.)

Defendant: I've got the content you want

Tell me about him…

…

UC/CD-1: Well I'm staying with a new friend I met this weekend who is pretty amazing

…

he's got some other perks

Defendant: What other perks?...

…

UC/CD-1: Have you ever gotten to have one before?

Defendant: A toddler? No

What about you new pedo buddy?

UC/CD-1: I'm not supposed to share a lot about him

But he has access and I'll leave it at that.

Defendant: Beautiful

Really hope we get to meet him Friday

(Doc. No. 19 at 4–5.) In other conversations, Defendant made the following statements to an FBI agent whom he believed was CD-1:

- I can get you into groups that will change your life…
- You like when kids get raped?
- It's better when you can hear their screams.
- I love when they're afraid.
- I like when they cry. Little Toddlers.

- I genuinely don't give a shit about them. I want them to suffer. I know its fucked up and evil. But it makes my cock rock hard.

(Id. at 6, 7.)

During a June 2026 interview with CD-1, CD-1 stated that Defendant referred to himself as CD-1's mentor for child pornography and, in order to avoid detection by law enforcement, he should use a burner phone and hard drive to store CSAM. (Id.)

On July 22, 2026, the search warrant was executed at Defendant's Philadelphia residence. (Doc. No. 1-1 at 5.) During the search, agents seized a cell phone from Defendant's person, as well as other electronic devices. (Id.) Because the FBI did not locate any CSAM on the cell phone while conducting an initial review, Defendant was not arrested on that day. (Doc. No. 6 at 3 n. 3.)

The next day, July 23, 2026, agents conducted a more thorough review of the device and located an encrypted Signal[2] application, which revealed that Defendant appeared to be a member of several group chats in which CSAM was shared, including "Proud Pedo HQ," "Male Family Reunion," "Baby Fuckers," "The Pedo Village," "Boys for P3rvs," "Pedo Haven," and "C/P Gay Exclusive." (Doc. No. 1-1 at 6–7.) For example, on July 19, 2026, a group chat was joined where members shared the following:

- At 8:55 A.M., an eight-minute and fifty-eight second video was distributed to the group. The video was a compilation of shorter videos, approximately 10 to 30 seconds in length, depicting pre-pubescent boys, most appearing to be under the age of 7 years old with adult males penetrating their anus or mouth with their penis or masturbating and ejaculating on the child. Some of the children depicted were infants appearing to be under the age of 18 months.

---

[2] According to Special Agent Roche, "Signal is a free, open-source messaging application which uses end-to-end encryption which allows users to send texts, images, and videos, and make voice and video calls securely. The end-to-end encryption secures the content of what ever is being sent by a user from any external parties." (Doc. No. 1-1 at 2.)

- At 10:26 A.M., a series of 32 images was distributed to the group chat depicting an infant female. One of the images depict the infant female laying naked on her back with handcuffs binding the infant's legs together while a black sex toy is inserted into the infant's vagina.

- At 11:04 A.M., an image was sent to the group chat of a prepubescent boy, laying naked on his back with his legs in the air and his hands on his buttocks exposing his anus and genitals. On the child's chest are the words "8 year old whore" with black paint or ink.

(Id. at 5–6.)

Upon returning to Defendant's home to conduct surveillance on July 23, 2026, Defendant's neighbor informed FBI agents that after they had completed their search the prior day, Defendant left the state for his parent's home in Virginia. (Doc. No. 15 at 6.)

Next, on July 24, 2026, Magistrate Judge Sandra Moore Wells approved a Criminal Complaint charging Defendant with receipt and attempted receipt of child pornography, in violation of U.S.C. § 2252(a)(2), as a second time offender. (Id. at 2.)

On July 26, 2026, Defendant was apprehended by local authorities in Maryland pursuant to an arrest warrant issued by Judge Wells. (Id. at 6.) When Defendant was apprehended, he was driving his car and had a new laptop and new cell phone in the vehicle.[3] (Id.)

On July 28, 2026, Defendant made his initial appearance before a U.S. Magistrate Judge in the District of Maryland and was released pending his appearance in this District. (Id.) The Magistrate Judge's Order required that Defendant appear in this District on August 10, 2026, which, at the Government's request, was moved to July 30, 2026. (Id.)

On July 30, 2026, a detention hearing was held before U.S. Magistrate Judge Pamela A. Carlos, who ordered Defendant's release with conditions. (See Doc. No. 11.) The Order

---

[3] The FBI is in the process of obtaining a search warrant for those devices. (Doc. No. 15 at 6.)

released Defendant on bail in the amount of $150,000 on his own recognizance and with other restrictions. The Order included the following computer and internet restrictions: (1) no cellular phone; (2) one computer for employment purposes only; (3) any computers owned by other residents must be password protected; and (4) visitors to Defendant's addressed are not permitted to bring any cellular phones, computers, or laptops into the residence. (Id. at 3.)

**1. Defendant's Prior Conviction**

Defendant is a registered child sex offender as a result of a prior conviction in the United States District Court for the District of Columbia for possession of child pornography. (Doc. No. 15 at 5.) The underlying facts of that case involved Defendant communicating with an FBI Undercover ("UC") in September 2015, in which Defendant stated he had "special pics," that he was "more into boys," that he "love[d] rape," and that child rape videos were his "favorite." (Id.) Defendant also sent the UC an image of a naked prepubescent boy bound in black tape and with his genitals exposed. (Id.) Defendant entered a negotiated guilty plea in that case and, on July 26, 2016, was sentenced to a term of nine (9) months incarceration to be followed by ten years of supervised release. (Id. at 5–6.) In 2024, Defendant's supervised release was terminated. (Id. at 6.)

**2. Defendant's Failure to Comply with Requirements Under Megan's Law**

Because Defendant is a "sex offender" he is required to register under the Sex Offender Registration and Notification Act ("SORNA"). (Doc No. 19 at 2); 34 U.S.C. § 2903(a). SORNA requires a sex offender to register in each jurisdiction where the offender resides, where the offender is an employee, or where the offender is a student. 34 U.S.C. § 2903(a). A sex offender must keep that registration current by informing the jurisdiction in which he is registered of any

change in name, residence, employment, or student status no later than three business days after such change. 34 U.S.C § 2903(c).

On August 27, 2025, Defendant, as required by SORNA, registered with the Pennsylvania State Police Sex Offender Registration. (Doc. No. 19 at 2.) As part of his registration, he acknowledged that he was required to register "within three (3) business days," any change "in information related to a vehicle…you own or operate…include[ing] any change in license plate number," and any change "in e-mail address, instant message address or any other designations used in Internet communications or postings (e.g., social networking sites, Internet message boards)." (Doc. Nos. 19 at 2–3; 19-1 at 1.) In his registration, Defendant provided certain internet identifiers including various email addresses, a LinkedIn account, and a Facebook account. (Doc. No. 19-1 at 4–5.) He did not register his Telegram or Signal Accounts, nor has he updated his vehicle license plate information. (Id. at 3.)

**B. Procedural Background**

Following Defendant's detention hearing before Judge Carlos who ordered him released with the conditions noted above, the Government filed the instant Motion to Appeal and Revoke the Pretrial Release Order and for Detention Pending Trial. (Doc. No. 15.) On August 4, 2026, the Court held a hearing on the appeal and ordered supplemental briefing. And on August 5, 2026, the parties filed supplemental memoranda. (Doc. Nos. 18, 19.)

After consideration of the arguments made by counsel for the parties and the testimony presented by Defendant's mother[4] at the hearing, the memorandums filed of record by the parties, and for the reasons explained more fully below, the Court will grant the Government's

---

[4] At the hearing, Defendant's mother, Donna Misiano, testified. She is Defendant's Third-Party Custodian who agreed to reside with him, to enforce the release conditions, and to report any violations.

Motion to Appeal and Revoke the Pretrial Release Order and for Detention Pending Trial (Doc. No. 15).

## II. JURISDICTION

Government's Motion to Revoke the Pretrial Release Order is a request for a review of Magistrate Judge Carlos' July 30, 2026 Release Order. This Court has jurisdiction to review a Magistrate Judge's Detention Order under 18 U.S.C. § 3145(b). Section 3145(b) "requires this Court to make a de novo determination of findings of fact underlying the detention Order." United States v. Cole, 715 F. Supp. 677, 677 (E.D. Pa. 1998) (citing United States v. Delker, 757 F.3d 1390, 1394 (3d Cir. 1985)).

## III. LEGAL STANDARD

Motions for bail or pretrial release pending trial are governed by the Bail Reform Act of 1984, 18 U.S.C. § 3141 et seq. Section 3142(e)(1) provides that a judicial officer must order the pretrial detention of a federal defendant "[i]f, after a hearing…,the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community…." 18 U.S.C. § 3142(e)(1).

Pursuant to 18 U.S.C. § 3142(e)(3)(E), in cases involving a minor victim under Section 2252(a)(1), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the appearance of the person as required. If the presumption applies, then a defendant must produce countervailing evidence that forms the basis for his contention that he will appear and will not pose a threat to the community. See U.S. v. Carbone, 793 F.3d 559, 560 (3d Cir. 1986). If the defendant meets this burden of production, the burden shifts back to the government to prove a risk of flight by a preponderance of the evidence or dangerousness by clear and convincing evidence. United States v. Perry, 788 F.2d 100, 114–15 (3d Cir. 1986). The burden of persuasion always rests with the Government. Id.

In making the determination as to whether a condition or combination of conditions will reasonably assure the appearance of a defendant as required and the safety of any other person and the community, a court is instructed by the Bail Reform Act to consider the following factors:

> (1) the nature and circumstances of the offenses charged, including whether the crime…, involves a minor victim…;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g).

## IV. ANALYSIS

### A. Nature and Circumstances of the Offense Charged

Regarding § 3142(g)'s first factor, the Criminal Complaint charges Defendant with receipt and attempted receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), as a second-time offender. If convicted of this charge, he faces a maximum sentence of 40 years' imprisonment, with a 15-year mandatory minimum term of imprisonment. (Doc. No. 15 at 2.)

The Third Circuit does not distinguish between a distributor or mere consumer in child pornography "because the mere 'existence of and traffic in child pornographic images create the potential for many types of harm in the community and presents a clear and present danger to all children.'" United States v. Schenberger, 498 F. Supp. 2d 738, 743 (D.N.J. 2007) (citing United

States v. MacEwan, 445 F.3d 237, 250 (3d Cir.2006)). As noted, the mere receipt of child pornography is dangerous and encourages illicit activity. See United States v. Nicholson ("[t]here can be no doubt that those who consume and distribute this material [child pornography] encourage its production, as there can be no doubt that the production of such materials involves the abuse of children.").

This Court's analysis here is not limited to only examining the offense charged. A court may also examine Defendant's actions in context. United States v. Conover, No. 12-CV-2080, 2012 WL 4846132, at *5 (D.N.J. Oct. 10, 2012). Here, Defendant's charged conduct reflects what can only be characterized as continuing activity. Defendant has a prior conviction for possession of child pornography. He describes himself as a "nepiophile," which is a person who is sexually attracted to children under the age of five years old. His conversations with CD-1 illustrate his mania involving not only the sexual abuse of children, but how he derives pleasure from their fear and hearing their cries.

**B. Weight of the Evidence Against Defendant**

Next, concerning § 3142(g)'s second factor, the weight of the evidence proffered by the Government to support the charges against Defendant is based on the Criminal Complaint, the Special Agent's affidavit, and forensic review of electronic devices seized during the investigation. While the Government's investigation is still ongoing, apparently it has already found Defendant's participation in online chats, which he described as "life changing," and containing explicit and disturbing content involving children. Chatlogs between Defendant and CD-1 also reflect his fixation on watching scared children be sexually violated. Additionally, Defendant's statements involving the use of "burner phones" and encrypted applications are significant because they reflect an awareness of the nature of the conduct and his intent to conceal such activity.

**C. Defendant's History and Characteristics**

The third factor this Court must examine is the history and characteristics of Defendant. Defendant argues that he previously complied with the terms of supervised release following his first conviction, has appeared for all court proceedings, and has substantial family support available to monitor him. (Doc. No. 18 at 7–8.)

Those considerations are not insignificant but are outweighed by the circumstances demonstrating concerns regarding future compliance. The Government has presented evidence that Defendant failed to comply with Megan's Law requirements by using encrypted applications that were not disclosed as required. It is significant that, after law enforcement executed an initial search and seized electronic devices, Defendant was apparently found days later in possession of additional electronic devices that are now being forensically examined.

In addition, the alleged conduct is particularly concerning because it occurred despite prior criminal proceedings, supervision, and restrictions intended to prevent similar behavior. As in Schenberger, favorable personal characteristics and community ties do not overcome evidence that a defendant may continue to engage in criminal conduct if released. 498 F. Supp. 2d at 744–45. Most concerningly, when Defendant was speaking with the person he believed to be CD-1, Defendant stated, that he "genuinely [does not] give a shit about [children]. I want [the] [children] to suffer. I know its fucked up and evil. But it makes my cock rock hard." Defendant made other similarly heinous comments about children, which further demonstrates his sexual interest in young children.

**D. Nature and Seriousness of the Danger to Any Person or the Community**

Finally, the last factor this Court must examine is the nature and seriousness of the danger to any person or the community if Defendant is released. The Bail Reform Act's concept of

dangerousness includes the risk of continued criminal conduct, not solely physical harm. Schenberger, F. Supp. 2d at 743–45.

Here, Defendant presents a substantial risk of continued unlawful activity based on his prior conviction for similar conduct, alleged violations of registration requirements, presence of encrypted applications on a cellphone taken from his person which had online chats containing CSAM and disturbing conversations involving children, and possession of additional electronic devices after the initial search. These facts demonstrate both access to the means of offending and a demonstrated inability or unwillingness to comply with restrictions. Defendant's statements regarding methods to avoid detection further support the conclusion that this conduct can continue in a concealed manner even while Defendant is under supervision. Although the conditions of release set by Judge Carlos restricted Defendant's use of an internet-enabled device to a laptop computer with monitoring equipment for employment purposes only, this condition of release is difficult to enforce. See Schenberger, F. Supp. 2d at 744–45 ("The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion.") (quoting United States v. Voelker, 489 F.3d 139, 145 (3d Cir.2007)). Simply put, the nature of Defendant's online communications described earlier demonstrates the risk of continued harm.

After carefully weighing the factors set forth in 18 U.S.C. § 3142(g), the Court finds that Defendant has failed to rebut the presumption under 18 U.S.C.§ 3142(e)(3) that no condition or combination of conditions will reasonably assure the safety of other person and the community. Even assuming Defendant has met the burden of production, the Government has independently established by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community.

Although the Court does not find that Defendant presents a flight risk, pre-trial detention is nevertheless warranted because the Bail Reform Act authorizes detention where no condition or combination of conditions will reasonably assure the safety of other persons and the community. 18 U.S.C. § 3142(e)(1). Accordingly, pretrial detention of Defendant is warranted.

## V. CONCLUSION

For the foregoing reasons, the Government's Motion to Appeal and Revoke the Pretrial Release Order and for Detention Pending Trial (Doc. No. 15) will be granted. An appropriate Order follows.